1   WILSON TURNER KOSMO LLP
    VICKIE E. TURNER (106431)
2   MERYL C. MANEKER (188342)
    ROBERT K. DIXON (262252)
3   MARK A. REIN (292437)
    550 West C Street, Suite 1050
4   San Diego, California  92101
    Telephone:  (619) 236-9600
5   Facsimile:  (619) 236-9669
    E-mail:  vturner@wilsonturnerkosmo.com
6   E-mail:  mmaneker@wilsonturnerkosmo.com
    E-mail:  rdixon@wilsonturnerkosmo.com
7   E-mail:  mrein@wilsonturnerkosmo.com

8   Attorneys for Defendant
    KRAFT HEINZ FOODS COMPANY
9

10              **UNITED STATES DISTRICT COURT**

11            **SOUTHERN DISTRICT OF CALIFORNIA**

12  SUZANNE ALAEI, Individually And On        Case No. 3:15-cv-02961-MMA-DHB
    Behalf Of All Others Similarly Situated,
13                                            **DEFENDANT KRAFT HEINZ**
           Plaintiff,                         **FOODS COMPANY'S**
14                                            **MEMORANDUM OF POINTS**
        v.                                    **AND AUTHORITIES IN**
15                                            **SUPPORT OF ITS MOTION TO**
    H.J. HEINZ COMPANY, L.P., and             **DISMISS PLAINTIFF SUZANNE**
16  KRAFT HEINZ FOODS COMPANY,                **ALAEI'S SECOND AMENDED**
                                              **COMPLAINT**
17         Defendants.

18                                            Date:        July 11, 2016
                                              Time:        2:30 p.m.
19                                            Courtroom:   3A

20                                            District Judge:    Hon. Michael M. Anello
                                              Magistrate Judge:  Hon. David H. Bartick
21

22

23

24

25

26

27

28

MEMO IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS SAC

1

# **TABLE OF CONTENTS**

2

I.    INTRODUCTION ................................................................................. 1

3

II.   ARGUMENT ....................................................................................... 2

4

     A.   Alaei Fails To Allege A Violation Of California's "Made In

5

          U.S.A." Law ........................................................................... 2

6

          1.   Domestically Producing Products With Foreign-Grown
              Ingredients Does Not Violate The Statute ....................... 3

7

          2.   The Combined Ingredients In Heinz 57 Do Not

8

              Constitute Separate Identifiable Components Subject To
              Section 17533.7 ........................................................... 6

9

          3.   Alaei's Allegations Regarding Ingredient Sourcing Are

10

              Sheer Guesswork And Do Not Establish Foreign Origin ......... 9

11

     B.   Kraft Heinz's Compliance With Section 17533.7 Provides A
          "Safe Harbor" Against Alaei's UCL And CLRA Claims ................. 12

12

     C.   Alaei Did Not Comply With The CLRA's Strict Notice

13

          Requirements .................................................................. 14

14

     D.   Alaei's Claims for Declaratory And Injunctive Relief Fail
          Because She Cannot Be Deceived In The Future............................. 16

15

III.  CONCLUSION.................................................................................. 18

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMO IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS SAC

# TABLE OF AUTHORITIES

## State Cases

*Benson v. Kwikset Corp.*,
        152 Cal.App.4th 1254 (2007) ........................................................ 3, 4, 6, 7, 13

*Bourgi v. W. Covina Motors, Inc.*,
        166 Cal.App.4th 1649 (2008) ................................................................ 12

*Cal-Tech Comms., Inc. v. L.A. Cellular Telephone Co.*
        20 Cal.4th 163 (1999) ................................................................ 12, 13

*Chavez v. Whirlpool Corp.*,
        93 Cal.App.4th 363 (2001) ................................................................ 12

*Colgan v. Leatherman Tool Grp., Inc.*,
        135 Cal.App.4th 663 (2006) ................................................................ 3, 4, 7

*Governing Bd. v. Mann*,
        18 Cal.3d 819 (1977) ................................................................ 2

*Int'l Ass'n of Cleaning & Dye House Workers v. Landowitz*,
        20 Cal.2d 418 (1942) ................................................................ 3

*Lopez v. Nissan N. Am., Inc.*,
        201 Cal.App.4th 572 (2011) ................................................................ 12, 13

*Outboard Marine Corp. v. Superior Court*,
        52 Cal.App.3d 30 (1975) ........................................................ 14, 15, 16

*Rankin v. Longs Drug Stores Cal., Inc.*,
        169 Cal.App.4th 1246 (2009) ................................................................ 2

*Wolf v. Pac. Southwest etc. Corp.*,
        10 Cal.2d 183 (1937) ................................................................ 3

*Younger v. Superior Court*,
        21 Cal.3d 102 (1978) ................................................................ 3

## Federal Cases

*Ang v. Bimbo Bakeries USA, Inc.*,
        2013 U.S. Dist. LEXIS 138897
            (N.D. Cal. Sept. 25, 2013) ................................................................ 16

*Ashcroft v. Iqbal*,
        556 U.S. 662 (2009) ................................................................ 9

*Bly-Magee v. Cal.*,
        236 F.3d 1014 (9th Cir. 2001) ................................................................ 9

*Burns v. Tristar Prods.*,
        2014 U.S. Dist. LEXIS 102052
        (S.D. Cal. July 25, 2014) ................................................................ 17

*Cafasso v. Gen. Dynamics C4 Sys.*,
        637 F.3d 1047 (9th Cir. 2011) ................................................................ 9

MEMO IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS SAC

*Campion v. Old Republic Home Prot. Co.*,
    861 F.Supp.2d 1139 (S.D. Cal. 2012)................................................................. 17
*Cattie v. Wal-Mart Stores, Inc.*,
    504 F.Supp.2d 939(S.D. Cal. 2007)................................................................. 17
*Dorfman v. Nutramax Labs, Inc.*,
    2013 U.S. Dist. LEXIS 136949
    (S.D. Cal. Sept. 23, 2013)................................................................. 17
*Figy v. Frito-Lay N. Am., Inc.*,
    67 F.Supp.3d 1075 (N.D. Cal. 2014)................................................................. 4
*Gest v. Bradbury*,
    443 F.3d 1177 (9th Cir. 2006) ................................................................. 16
*Hall v. SeaWorld Entm't, Inc.*,
    2015 U.S. Dist. LEXIS 174294
    (S.D. Cal. Dec. 23, 2015)................................................................. 17
*Hodgers-Durgin v. De La Vina*,
    199 F.3d 1037 (9th Cir. 1999) ................................................................. 17
*In re Century Aluminum Co. Sec. Litig.*,
    704 F.3d 1119 (9th Cir. 2013) ................................................................. 5, 9, 10
*Kane v. Chobani, Inc.*,
    973 F.Supp.2d 1120 (N.D. Cal. 2014) ................................................................. 4
*Kane v. Chobani, LLC*,
    2016 U.S. App. LEXIS 5517
    (9th Cir. Mar. 24, 2016)................................................................. 4
*Kennedy v. Natural Balance Pet Foods, Inc.*,
    2007 U.S. Dist. LEXIS 57766
    (S.D. Cal. Aug. 8, 2007)................................................................. 5, 6, 8
*Laster v. T-Mobile U.S., Inc.*,
    446 F. App'x 613 (9th Cir. 2012) ................................................................. 17
*Laster v. T-Mobile USA, Inc.*,
    2009 U.S. Dist. LEXIS 116228
    (S.D. Cal. Dec. 14, 2009)................................................................. 17
*Makaeff v. Trump Univ., LLC*,
    2015 U.S. Dist. LEXIS 156160
    (S.D. Cal. Nov. 18, 2015) ................................................................. 17
*Mason v. Nature's Innovation, Inc.*,
    2013 U.S. Dist. LEXIS 68072
    (S.D. Cal. May 13, 2013)................................................................. 17
*Mujica v. AirScan Inc.*,
    771 F.3d 580 (9th Cir. 2014) ................................................................. 9
*Neubronner v. Milken*,
    6 F.3d 666 (9th Cir. 1993) ................................................................. 9

-iii-    No. 3:15-cv-02961-MMA-DHB

MEMO IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS SAC

*Oxina v. Lands' End, Inc.*,
    2015 U.S. Dist. LEXIS 94847
    (S.D. Cal. June 18, 2015) ........................................................... 14, 17
*Ryman v. Sears, Roebuck & Co.*,
    505 F.3d 993 (9th Cir. 2007) ......................................................... 3
*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ..................................................................... 16
*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ..................................................... 12
*Waller v. Hewlett-Packard Co.*,
    2011 U.S. Dist. LEXIS 145276
    (S.D. Cal. Dec. 14, 2011 ............................................................. 16

**State Statutes**

California Business and Professions Code Section 17200 ....................................... 1
California Business and Professions Code Section 17203 ...................................... 16
California Business and Professions Code Section 17533.7 ...... 1, 2, 6, 8, 11, 12, 13
California Business and Professions Code Section 17535 ...................................... 16
California Civil Code Section 1750 ...................................................................... 1
California Civil Code Section 1782 ......................................................... 14, 15, 16

**Federal Rules**

Federal Rules of Civil Procedure, Rule 9(b) .............................................. 4, 6, 9, 10
Federal Rules of Civil Procedure, Rule 10(c) ....................................................... 15

**Other Authorities**

FDA Compliance Policy Guide § 560.200, County of Origin Labeling,
    available at
    http://www.fda.gov/ICECI/ComplianceManuals/CompliancePolicyGu
    idanceManual/ucm074567.htm ......................................................... 7

1  I.    **INTRODUCTION**

2         Plaintiff Suzanne Alaei ("Alaei") alleges that Defendant Kraft Heinz Foods

3  Company's ("Kraft Heinz") falsely labeled her bottle of Heinz 57 sauce ("Heinz 57")

4  as "MFD. In U.S.A."  Now her third time at bat, Alaei's pleading *still* fails to

5  adequately plead causes of action under California Business and Professions Code

6  Section 17533.7, Business and Professions Code Section 17200 *et seq.* (the "Unfair

7  Competition Law" or "UCL"), and Civil Code Section 1750 *et seq* (the "Consumers

8  Legal Remedies Act" or "CLRA").

9         Though Alaei's original Complaint and First Amended Complaint ("FAC")

10 alleged that jalapenos, tamarind extract, and turmeric were not from the United States,

11 Alaei now claims she was "deceived" by the presence of turmeric, tomato puree, and

12 mustard flour which, on "information and belief," she contends are not "from" the

13 United States.  Forced to show her hand, Alaei's new allegations reveal her "belief" is

14 based on nothing more than the fact turmeric, tomatoes, and mustard are grown *both*

15 overseas and domestically.  From there, Alaei leaps to the conclusion Kraft Heinz

16 sourced all of these ingredients from abroad, while ignoring an *obvious alternative*

17 *explanation* that Kraft Heinz's ingredients came from the U.S.  Unfortunately for

18 Alaei, even if her allegations plausibly showed Heinz 57 contained foreign

19 ingredients, California's "Made in U.S.A." statute does not prohibit manufacturers

20 from using raw materials like turmeric, tomatoes, and mustard *even if they are grown*

21 *in and acquired from a foreign source.*  Even if the statute did include such a

22 prohibition, Kraft Heinz's label is compliant because the ingredients that are

23 combined to make Heinz 57 are not *distinct* components of the product that are

24 *necessary* for its proper use as a sauce.   As the label on  Heinz 57 complies with

25 California's "Made in U.S.A." statute, Alaei's claims based on the UCL and CLRA

26 quickly crumble.  Moreover, Alaei failed to provide proper notice under the CLRA,

27 and she remains unable to assert claims for declaratory and injunctive relief as she

28 now has full knowledge of Kraft Heinz's alleged misrepresentation.

1    It is evident Alaei is simply unable to allege particular facts supporting a

2 plausible, legally cognizable claim.  She has given all she has to give.  A fourth

3 attempt is not going to change anything.  Thus, Kraft Heinz respectfully requests the

4 Court end the game and dismiss the Second Amended Complaint ("SAC") with

5 prejudice.

6  **II.    ARGUMENT**

7      **A.    Alaei Fails To Allege A Violation Of California's "Made In U.S.A."**

8         **Law**

9      California Business and Professions Code Section 17533.7 ("Section 17533.7")

10 provides, in pertinent part:

11         (a)    It is unlawful for any person, firm, corporation, or association to
          sell or offer for sale in this state any merchandise on which merchandise
12         or on its container there appears the words "Made in U.S.A.," "Made in
          America," "U.S.A.," or similar words if the merchandise or any article,
13         unit, or part thereof, has been entirely or substantially made,
          manufactured, or produced outside of the United States.
14
15

16 Section 17533.7 does not apply if the foreign made components "constitute not more

17 than 5 percent of the final wholesale value of the manufactured product," or, if any

18 foreign made component cannot be domestically produced or obtained, "not more than

19 10 percent of the final wholesale value of the manufactured product."[1]  *Id.* at §§

20 17533.7 (b), (c).

21 _____

22 [1] Section 17533.7 was amended by Senate Bill 633 (Hill), effective January 1, 2016.
*See* Stats. 2015 ch. 238 § 1.  Though Alaei filed her original complaint on December
23 31, 2015 and complains of a product she purchased in November 2015, the amended
statute applies.  Unlike the retroactive application of new laws that impose liability for
24 previously prohibited conduct, which may offend due process considerations,
25 "different considerations are implicated in the limited circumstances in which the
Legislature enacts a statute that completely reverses substantive law by effectively
26 permitting previously prohibited conduct."  *Rankin v. Longs Drug Stores Cal., Inc.,*
169 Cal.App.4th 1246, 1253 (2009).  "[A]ll statutory remedies are pursued with full
27 realization that the legislature may abolish the right to recover at any time."
28 *Governing Bd. v. Mann,* 18 Cal.3d 819, 829 (1977).  Thus, it has long been held that a

MEMO IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS SAC

### 1.   Domestically Producing Products With Foreign-Grown Ingredients Does Not Violate The Statute

As this Court noted when dismissing Alaei's FAC, "[a]lthough Plaintiff's allegation is unclear, she appears to take issue with the origin of the product's ingredients, rather than the location where the product is made." (Dkt. 22 at 5:2–4.) Indeed, that is the fatal flaw in Alaei's claim.  Under Alaei's latest iteration, Kraft Heinz has allegedly improperly labeled Heinz 57 as "MFD. in U.S.A." because it contains turmeric, tomato puree, and mustard flour from "outside of the United States of America." (SAC at ¶ 30.)  But "one would not violate the statute by making, manufacturing, or producing merchandise solely in the United States even though using raw materials acquired from a foreign source." *Benson v. Kwikset Corp.*, 152 Cal.App.4th 1254, 1272 (2007).[2]  Rather, there must be a *substantial*, *foreign*, "*physical* process of transforming raw materials into goods." *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal.App.4th 663, 685 (2006) (emphasis in original).  In other words, a violation can only arise if the raw inputs first become "a new and different article, product, or commodity, having a distinctive name, character, or use," as a

---

"repeal of the statute, or an amendment thereof, resulting in a repeal of the statutory provision under which the cause of action arose wipes out the cause of action unless the same has been merged into a final judgment." *Wolf v. Pac. Southwest etc. Corp.*, 10 Cal.2d 183, 185 (1937); *accord Younger v. Superior Court*, 21 Cal.3d 102, 109 (1978); *Int'l Ass'n of Cleaning & Dye House Workers v. Landowitz*, 20 Cal.2d 418 (1942).  Accordingly, the new version of Section 17533.7 governs this case.

[2] Curiously, in her sur-reply opposing Kraft Heinz's earlier motion to dismiss, Alaei referred to *Benson* as "a non-binding decision from a California appellate court." (Dkt. 20-1 at 3:13–14.)  *Benson* has never been reversed or depublished.  In fact, the California Supreme Court denied a request to have the case depublished.  *Benson (James) v. Kwikset Corp.*, 2007 Cal. LEXIS 12102 (Oct. 24, 2007).  Accordingly, it is binding on this Court.  *Ryman v. Sears, Roebuck & Co.*, 505 F.3d 993, 995 (9th Cir. 2007) ("Where there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts.").

result of undergoing a "foreign operation, process, or activity . . . considerable in either amount, value, or worth." *Benson*, 152 Cal.App.4th at 1271–72. In order to pass muster under Federal Rules of Civil Procedure Rule 9(b), the foreign manufacturing process must be alleged with specificity. *See Figy v. Frito-Lay N. Am., Inc.*, 67 F.Supp.3d 1075, 1089–90 (N.D. Cal. 2014); *Kane v. Chobani, Inc.*, 973 F.Supp.2d 1120, 1137 (N.D. Cal. 2014) *vacated on other grounds sub nom. Kane v. Chobani, LLC*, 2016 U.S. App. LEXIS 5517 (9th Cir. Mar. 24, 2016).

For example, the subject merchandise in *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 673 (2006), was a handheld multi-tool comprised of components such as screwdrivers, plies, saws, files, corkscrews, and clip plates. Each of these significant working parts were investment cast, fineblanked, formed, hardened, cut, forged, polished, and/or machined in various foreign countries. *Id.* at 673, 691. In other words, the raw material (metal) was melted down, underwent intense transformation to form something entirely new (the various parts of the multi-tool), which were then exported to the U.S. *Id.* The court held that these components were not substantially made in the United States because the "casting, forging, cutting, and forming of metal parts constituted a direct and significant input into those parts and the tools." *Id.* at 692. In other words, the "foreign inputs into various parts in each tool were both 'considerable' and 'to a large degree' relative to the parts—and even to the tool as a whole." *Id.*; *see also Benson*, 152 Cal.App.4th at 1273 (lock's "latch subassembly performed in Mexico constituted a *substantial* portion of the manufacturing process" (emphasis in original)).

Although still largely unclear, Alaei's SAC appears to take issue with the origin of the turmeric, tomatoes, and mustard that allegedly make their way to the United States, where they are prepared and combined with multiple other ingredients to make Heinz 57. (SAC at ¶¶ 39–45.) Specifically, Alaei alleges that turmeric is not grown

1  in the United States, but rather is 100% imported.  (SAC at ¶¶ 39–40.) [3]  Alaei also

2  alleges that Kraft Heinz, which operates and sells sauces throughout the world, grows

3  tomatoes "in more than 30 countries," and generically that "mustard is often supplied

4  to the United States from Europe and Asia."  (SAC at ¶¶ 41–45.)  But even if Alaei

5  had properly alleged that the turmeric, tomatoes, and mustard are foreign-sourced,

6  those ingredients are simply a few of the many raw ingredients of the final Heinz 57

7  product.  Although Alaei peppers her SAC with the conclusory allegation that these

8  ingredients are somehow "manufactured" outside of the United States of America,

9  (e.g., SAC at ¶¶ 21, 73, 82–84, 86, 94, 103), she does not allege facts showing *any*

10  form of foreign manufacturing, much less the substantial level required by *Colgan* and

11  *Benson*.  Notably, Alaei never alleges that Heinz 57 is not mixed, prepared, cooked, or

12  bottled in the United States using otherwise domestic ingredients.  (*See generally*

13  SAC.)  Rather, the few specific facts alleged show, at best, that *some* of the world's

14  turmeric, tomatoes, and mustard are *grown* outside of the United States.  (SAC at ¶¶

15  39–45.)  But these herbs and vegetables are no different than the raw metal in *Colgan*.

16  Alaei has not alleged any foreign, physical, transformative process. [4]  As *Benson*

17  makes clear, Section 17533.7 does not prohibit companies from using raw materials

18  grown or formed in, and acquired from, foreign sources.

19       Alaei will likely try to find solace in *Kennedy v. Natural Balance Pet Foods,*

20  *Inc.*, 2007 U.S. Dist. LEXIS 57766, at *11–12 (S.D. Cal. Aug. 8, 2007), which held a

21  plaintiff stated a Section 17533.7 claim based on allegations her cat food, labeled

---

23  [3] The SAC's cited authority for this proposition (¶ 40) does not state that *all* turmeric is imported, but instead discusses where *imported* turmeric originates.

24  [4] The best Alaei could do was allege Kraft Heinz, a global food company,
25  "acknowledges *generally* that it has facilities worldwide that manufacture and produce
*some* of its products."  (SAC at ¶ 47 (emphasis added).)  This does not plausibly
26  allege that ingredients in *her* Heinz 57 came from such facilities.  *See In re Century*
27  *Aluminum Co. Sec. Litig.*, 704 F.3d 1119, 1121–23 (9th Cir. 2013).  Nor does it
provide the requisite level of particularity about what this manufacturing process
28  might entail.

MEMO IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS SAC

1  "Made in the USA," contained a "manufactured rice protein ingredient" from China.

2  But this lone district court opinion is inapposite.  First, the court appeared to

3  incorrectly apply the general *Twombly/Iqbal* standard, as opposed to Rule 9(b).  *See*

4  *id.* at *4, *11–12.  Second, *Benson* was never cited by the parties or the court in

5  *Kennedy*[5], and therefore the court did not have the benefit of its guidance on the

6  amount of foreign processing, both quantitative and qualitative, required to constitute

7  a violation.  *See Benson*, 152 Cal.App.4th at 1271-72.  Third, the foreign ingredient in

8  *Kennedy* (a Chinese "manufactured rice protein") was inherently a manmade,

9  synthetic creation; the result of an overseas manufacturing process.  Notably, there did

10  not appear to be any dispute that the rice -- much like turmeric, tomatoes, and mustard

11  -- was a raw material.  *See Kennedy*, 2007 U.S. Dist. LEXIS 57766, at *11-12.[6]

12       Accordingly, even if the turmeric, tomatoes, and mustard used to eventually

13  create Heinz 57 originated from overseas (which, as discussed below, Alaei fails to

14  sufficiently allege), there can be no violation as a matter of law and the SAC must be

15  dismissed with prejudice as to both Heinz 57 and the allegedly "substantially similar"

16  products.[7]

17           **2.    The Combined Ingredients In Heinz 57 Do Not Constitute**

18                **Separate Identifiable Components Subject To Section 17533.7**

19       Alaei's claims based on the origin of Heinz 57 ingredients also fail because

20  when merchandise consists of two or more physical elements or pieces, Section

21  _____

22  [5] The Court of Appeal's opinion in *Benson* was issued a mere three days before
   Natural Balance filed its motion to dismiss. It necessarily was not reported until the
23  middle or after the close of briefing on the motion.

24  [6] The *Kennedy* court subsequently denied class certification on multiple grounds. *See*
   *generally Kennedy v. Nat. Balance Pet Foods, Inc.*, No. 3:07-cv-01082-H-RBB (S.D.
25  Cal. June 12, 2008), *aff'd* 361 F. App'x 785, 787 (9th Cir. 2010).

26  [7] Alaei claims there are two other products that are "substantially similar" to the
27  product she purchased.  (SAC at ¶ 54.)  Though Kraft Heinz need not address this
   issue in the instant motion, it reserves its right to dispute the "substantial similarity" of
28  these products at a later time.

MEMO IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS SAC

1    17533.7 only applies to each "separate, identifiable," and "distinct component of

2    merchandise that is necessary for its proper use or operation." *Benson*, 152

3    Cal.App.4th at 1272–73.   A component is not subject to Section 17533.7 unless it

4    retains its individual identity and remains a tangible, isolable part of the greater

5    merchandise after its incorporation.  *See Benson*, 152 Cal.App.4th at 1272–73;

6    *Colgan*, 135 Cal.App.4th at 691–92.

7        For example, in *Benson* the subject merchandise was locksets.  *Id.* at 1264.  The

8    plaintiffs alleged the locksets were illegally labeled "Made in U.S.A." as they

9    contained, among other things, screws and pins that were made in Taiwan.  *Id.*  The

10   court held that "[s]crews and pins are distinct components clearly necessary to the

11   proper use or operation of a lockset because without them one could not install or

12   operate the product."  *Id.* at 1273.  Similarly, in *Colgan*, each of the individual tools in

13   the handheld Leatherman product were clearly distinct "components that . . . were

14   incorporated, in varying combinations," and were necessary to its function as a multi-

15   tool.  *See Colgan*, 135 Cal.App.4th at 691–92.  In both cases, the component was

16   something that could be specifically pointed to, touched, and segregated from the

17   greater merchandise of which it formed a necessary part.

18       In contrast, as the federal Food and Drug Administration explains in its

19   guidance on country of origin labeling, an ingredient loses its individual identity once

20   prepared and irrevocably incorporated with other ingredients:

21           An imported product, such as shrimp, is peeled, deveined and
             incorporated into a shrimp dish, such as "Shrimp Quiche."  **The product**
22           **is no longer identifiable as shrimp** but as "Quiche."  The quiche is a
             product of the USA.   Therefore, labeling it as "product of the USA"
23           would not be a violation of the FFD&C Act.

24

25   FDA Compliance Policy Guide § 560.200, Country of Origin Labeling, available at

26   http://www.fda.gov/ICECI/ComplianceManuals/CompliancePolicyGuidanceManual/u

27   cm074567.htm (emphasis added).

28

MEMO IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS SAC

1    Here, although turmeric, tomato puree, and mustard flour may at some point be
2    distinct in their native state, they cease to be so when they are irrevocably
3    incorporated with numerous other ingredients into the final Heinz 57 product.  Unlike
4    the screws and pins in *Benson*, or the multiple tools in *Colgan*, Alaei cannot point to,
5    touch, or segregate any of these ingredients from the final Heinz 57 sauce.  The only
6    thing Alaei can point to or touch is Heinz 57 itself.

7    Nor has Alaei alleged any facts with particularity that would plausibly suggest
8    turmeric, tomato puree, or mustard flour are essential to Heinz 57's purpose as a
9    sauce.  (*See generally* SAC.)  In fact, Alaei's own allegations show that Heinz 57
10   contains 18 listed ingredients, and two of the three ingredients she takes issue with
11   (turmeric and mustard flour) are among a list of ingredients comprising less than 2%
12   of Heinz 57.  (SAC at ¶ 22.)  Accordingly, it is implausible to assume that Heinz 57
13   would not function as a sauce if one of the three ingredients were replaced with
14   something else or removed completely.

15   Alaei will likely again rely heavily on *Kennedy*, 2007 U.S. Dist. LEXIS 57766,
16   at *12, which held the plaintiff sufficiently alleged the manufactured rice protein was
17   a "part" of the cat food.  However, the *Kennedy* court was concerned the defendant
18   had made the contrary argument "[w]ithout citation to legal authority." *Id*.  Again, the
19   *Kennedy* court did not have the benefit of *Benson* and its holding that Section 17533.7
20   only applies to components of merchandise that are both *distinct* and *necessary*.  This
21   Court has the benefit of *Benson*, and is in fact bound by it, not *Kennedy*.

22   Accordingly, even if turmeric, tomato puree, and mustard flour were foreign
23   ingredients that have been substantially manufactured abroad, none of them are a
24   distinct, necessary component of Heinz 57—or any of the allegedly "substantially
25   similar" products—and the SAC must be dismissed with prejudice.

26

27

28

MEMO IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS SAC

1
2

### 3. Alaei's Allegations Regarding Ingredient Sourcing Are Sheer Guesswork And Do Not Establish Foreign Origin

3      Even assuming the theory of Alaei's case were legally tenable, she has failed to

4  plausibly allege with particularity that ingredients in her bottle of Heinz 57 are not

5  from the United States sufficient to give rise to a violation of Section 17533.7.

6  Rather, her allegations demonstrate that she is simply guessing at this juncture and

7  hoping that discovery will turn up a violation, which is precisely what Rule 9(b) is

8  designed to prevent. *See Bly-Magee v. Cal.*, 236 F.3d 1014, 1018 (9th Cir. 2001)

9  (noting Rule 9(b) serves "to deter the filing of complaints as a pretext for the

10  discovery of unknown wrongs . . .and to prohibit plaintiffs from unilaterally imposing

11  upon the court, the parties and society enormous social and economic costs absent

12  some factual basis"); *see also Mujica v. AirScan Inc.*, 771 F.3d 580, 593 & n.7 (9th

13  Cir. 2014) (stating "plaintiffs must satisfy the pleading requirements of Rule 8 *before*

14  the discovery stage, not after it" (emphasis in original)).

15      Rule 9(b) requires a plaintiff making allegations on information and belief to

16  "state the factual basis for the belief," which then forms the basis of the plausibility

17  analysis. *See Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) (claim dismissed

18  when factual basis for "information and belief" was "no more than 'suspicious

19  circumstances'"); *see Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1055 (9th

20  Cir. 2011) (holding that complaints subject to Rule 9(b) "must, in addition to pleading

21  with particularity, also plead plausible allegations"). "When faced with two possible

22  explanations, only one of which can be true and only one of which results in liability,

23  plaintiffs cannot offer allegations that are 'merely consistent with' their favored

24  explanation but are also consistent with the alternative explanation." *In re Century

25  Aluminum Co. Sec. Litig.*, 704 F.3d 1119, 1122 (9th Cir. 2013) (citing *Ashcroft v.

26  Iqbal*, 556 U.S. 662, 678 (2009)).

27      In *Century Aluminum*, the plaintiff shareholders alleged shares of stock they

28  purchased were issued under a materially false and misleading prospectus supplement,

provided in connection with a secondary offering. *Id.* at 1120–21. "To prevail, plaintiffs would need to prove that the shares they purchased came from the pool of shares issued in the secondary offering, rather than from the pool of previously issued shares." *Id.* at 1121. The plaintiffs alleged their stock was "directly traceable to the Company's Second Offering" because they purchased it when the market was flooded with stock from the secondary offering and one plaintiff specifically directed his broker to purchase shares in the secondary offering. *Id.* at 1121–23. The Ninth Circuit affirmed dismissal, finding the "allegations do not give rise to a reasonable inference that plaintiffs' shares are traceable to the secondary offering." *Id.* at 1122.

> Accepting the allegations as true, plaintiffs' shares could have come from the secondary offering, **but the "obvious alternative explanation" is that they could instead have come from the pool of previously issued shares**. *Twombly*, 550 U.S. at 567. Plaintiffs' allegations are consistent with their shares having come from either source. . . . Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, *see Twombly*, 550 U.S. at 554, in order to render plaintiffs' allegations plausible within the meaning of *Iqbal* and *Twombly*. Here, plaintiffs' allegations remain stuck in "neutral territory," *Twombly*, 550 U.S. at 557, because they do not tend to exclude the possibility that their shares came from the pool of previously issued shares.

*Century Aluminum*, 704 F.3d at 1122–23 (emphasis added). As this Court has already noted, it is insufficient under Rule 9(b) to simply allege a product "*may* have contained foreign ingredients, or *may* have been made somewhere besides the United States." (Dkt. 22 at 14–17 (emphasis added).)

Here, Alaei alleges "[u]pon information and belief, at least a portion of the tomato puree used by Defendant in Heinz 57 Sauce was produced outside of the United States of America, including but not limited to Mexico." (SAC at ¶ 43.) She similarly alleges "[u]pon information and belief, companies within the United States of America, such as Defendant, *often* source from Nepal, Canada or India some of the mustard or mustard flour to be used in consumable products." (SAC at ¶ 44, emphasis

1  addded.)  However, the factual basis for her information and belief is simply that Kraft

2  Heinz "has supplied 4.6 billion hybrid tomato seeds each year to [its] farmers and

3  processing partners in more than 30 counties, **including the United States**," and that

4  "mustard is often supplied to the United States from Europe and Asia," although "**also**

5  **grown within the United States**."  (SAC ¶¶ 42, 45 (emphasis added).)  Thus, it is

6  clear Alaei's complaint is based on nothing more than the fact tomatoes and mustard

7  are produced in both the United States and abroad.  The same can be said with just

8  about every type of commodity.  Although Alaei implies the tomatoes and mustard in

9  Heinz 57 came from abroad, she ignores the "obvious alternative explanation" that

10  these ingredients came from the United States.  Not only does Alaei fail to allege facts

11  excluding such alternative explanation, it is the most logical explanation:  Kraft Heinz

12  may use international suppliers and manufacturing facilities for its international

13  market and domestic suppliers and manufacturing facilities for its domestic market.

14  (*See* SAC ¶¶ 47–48.)  Thus, Alaei has failed to plausibly allege her specific bottle of

15  Heinz 57 contains foreign tomato puree or mustard flour.

16      Alaei's allegations that turmeric is not produced in the United States, but rather

17  is 100% imported, (SAC at ¶ 39–40), do not save her claim.[8]  First, the authority Alaei

18  cites in the SAC (¶ 40) does not state that *all* turmeric is imported, but instead

19  discusses where *imported* turmeric originates.  Furthermore, as discussed above, use

20  of foreign turmeric is permitted because it is a raw ingredient that is neither a distinct

21  nor necessary part of Heinz 57.  (*See supra*, II.B.1–2.)  Moreover, assuming turmeric

22  is 100% imported, then a "MFD. in U.S.A." label is permissible so long as the

23  turmeric constitutes "not more than 10 percent of the final wholesale value" of Heinz

24  57.  Cal. Bus. & Prof. Code § 17533.7(c)(1).  Alaei makes no allegations plausibly

25  showing this single ingredient accounts for more than ten percent of Heinz 57's final

26

27

28  [8] Kraft Heinz only accepts this as true for purposes of this motion.

-11-          No. 3:15-cv-02961-MMA-DHB

MEMO IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS SAC

1  wholesale value.  Rather, the SAC shows the reverse is true, as Alaei correctly pleads

2  turmeric makes up less than two percent of Heinz 57.  (SAC at ¶ 22.)

3      Alaei fails to allege a plausible claim for relief with respect to Heinz 57 and the

4  alleged "substantially similar" products.  Given Alaei's repeated failure to plausibly

5  plead her claims with the requisite level of particularly, as required by Rules 8 and

6  9(b), dismissal with prejudice is appropriate.  *See, e.g., Vess v. Ciba-Geigy Corp.*

7  *USA*, 317 F.3d 1097, 1108 (9th Cir. 2003).

8      **B.    <u>Kraft Heinz's Compliance With Section 17533.7 Provides A "Safe</u>**

9      **<u>Harbor" Against Alaei's UCL And CLRA Claims</u>**

10     Alaei also alleges claims under California's Unfair Competition Law and the

11 Consumer Legal Remedies Act.  However, the conduct complained of is a repeat of

12 her doomed Section 17533.7 claim.  (SAC at ¶¶ 82–111.)  Kraft Heinz's compliance

13 with Section 17533.7 provides a "safe harbor" that prevents Alaei from recasting her

14 claim under the guise of the UCL and CLRA.  As the California Supreme Court has

15 explained:

16     Courts may not simply impose their own notions of the day as to what is
17     fair or unfair.  Specific legislation may limit the judiciary's power to
       declare conduct unfair.  If the Legislature has permitted certain conduct
18     or considered a situation and concluded no action should lie, courts may
       not override that determination.  When specific legislation provides a
19     "safe harbor," plaintiffs may not use the general unfair competition law
20     to assault that harbor.

21 *Cal-Tech Comms., Inc. v. L.A. Cellular Telephone Co.*, 20 Cal.4th 163, 182 (1999);

22 *see Chavez v. Whirlpool Corp.*, 93 Cal.App.4th 363, 375 (2001) (finding that to

23 "permit a separate inquiry into essentially the same question under the unfair

24 competition law would only invite conflict and uncertainty").  The "safe harbor"

25 doctrine applies equally to claims under both the UCL and CLRA.  *Lopez v. Nissan N.*

26 *Am., Inc.*, 201 Cal.App.4th 572, 594 (2011).  Accordingly, Alaei cannot hold Kraft

27 Heinz liable for labeling permitted by Section 17533.7.  *See id.* at 590–95; *Bourgi v.*

28 *W. Covina Motors, Inc.*, 166 Cal.App.4th 1649, 1659–61 (2008).

1    For example, the plaintiff consumers in *Lopez* alleged that certain of defendant

2   car manufacturer's odometers over-registered mileage by approximately two percent.

3   *Id.* at 576.  However, under California law, an odometer is "correct" so long as it is

4   within a plus or minus four percent tolerance.  *Id.* at 579 (citing Bus. & Prof. Code §

5   12500(c)).  The court held the manufacturers could not be liable under the UCL or

6   CLRA if the odometers operated within the four percent "safe harbor":

7       With respect to an odometer that qualifies as "correct" even though it
        may not be 100 percent accurate, the Legislature has implicitly
8       determined that any slight injury to consumers does not outweigh the
        harm if more stringent requirements for precision were to apply.  In
9       deeming qualifying odometers "correct," section 12500, subdivision (c)
10      "clearly permits" their design (*Cal-Tech*, *supra*, 20 Cal.4th at 183), and
        we "may not use the unfair competition law to condemn actions the
11      Legislature permits." (*Id.* at p. 184.)

12

13  *Id.* at 592.  As "the odometers record[ed] mileage in accordance with the governing

14  legal standard in California" and "operate[d] within the lawful tolerance," each

15  manufacturer had "no obligation to disclose that its odometers may not be 100 percent

16  accurate" and could legally state that "the odometer records the total distance the

17  vehicle has been driven." *Id.* at 592–95.

18      Here, Section 17533.7 clearly permits Kraft Heinz's use of "MFD. in U.S.A."

19  on the Heinz 57 label so long as neither it, nor "any article, unit, or part thereof, has

20  been entirely or substantially made, manufactured, or produced outside of the United

21  States."  Indeed, the recent amendments to Section 17533.7 provide even more

22  explicit five and ten percent content safe harbors.  Although Alaei argues Heinz 57 is

23  not "MFD. in U.S.A.," as she understands that phrase, the Legislature has specifically

24  determined otherwise.  Kraft Heinz's labeling is within "tolerance" and "governing

25  legal standard in California."  Alaei may not relabel her "Made in U.S.A." claim as

26

27

28

one under the UCL or CLRA, and therefore both claims should be dismissed with prejudice.[9]

### C. **Alaei Did Not Comply With The CLRA's Strict Notice Requirements**

The CLRA requires that:

(a) Thirty days or more prior to the commencement of an action for damages pursuant to this title, the consumer shall do the following:

> (1) Notify the person alleged to have employed or committed methods, acts, or practices declared unlawful by Section 1770 of the particular alleged violations of Section 1770.
>
> (2) Demand that the person correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation of Section 1770.

The notice shall be in writing and shall be sent by certified or registered mail, return receipt requested, to the place where the transaction occurred or to the person's principal place of business within California.

Cal. Civ. Code § 1782. Strict compliance with this notice provision is mandatory. *Outboard Marine Corp. v. Superior Court*, 52 Cal.App.3d 30, 38–41 (1975).

In *Outboard Marine*, the plaintiff argued that he was in "substantial compliance" with the CLRA's notice provisions because he not only gave a copy of the initial complaint to defendants counsel 30 days before actual service, and but also wrote and mailed a certified demand letter to the defendant months after the complaint was filed. *Id.* at 39–40. Thus, the plaintiff argued that the defendants "had actual notice of the defects, and that a technicality of form should not be a bar to the action." *Id.* at 40. The court was unconvinced and found in "the face of the clear, unambiguous, and unequivocal language of the statute, his contention must fail." *Id.*

---

[9] Section 17533.7 is in fact *stricter* than the CLRA. *See Benson v. Kwikset Corp.*, 152 Cal.App.4th 1254, 1265, 1274–75 (2007); *see also Oxina v. Lands' End, Inc.*, 2015 U.S. Dist. LEXIS 94847, at *23–24 (S.D. Cal. June 18, 2015) (Anello, J.) (dismissing UCL claim in the absence of alleged wrongdoing beyond plaintiff's failed Section 17533.7 claim).

1    The court recognized a liberal construction did not permit it "to disregard or enlarge

2    the plain provisions of the statute, nor does it go beyond the meaning of the words

3    used when they are clear and unambiguous." *Id.* (citations omitted).  Rather, the court

4    acknowledged it "is a prime rule of construction that the legislative intent underlying a

5    statute must be ascertained from its language; if the language is clear there can be no

6    room for interpretation, and effect must be given to its plain meaning." *Id.* (citations

7    omitted).  Thus, the court held that "literal application of the notice provisions" was

8    required. *Id.* at 41.

9          The CLRA requires, in no uncertain terms, that notice shall be sent to either (1)

10   "the place where the transaction occurred" or (2) "the person's principal place of

11   business within California."  Cal. Civ. Code § 1782.  Exhibit A to Alaei's SAC—her

12   alleged CLRA demand letter—reveals she failed to comply with the CLRA's strict

13   notice requirements.  (SAC at ¶ 49 and Ex. A.)[10]  Exhibit A purports to have been

14   mailed to a Kraft Heinz address in Pittsburgh, Pennsylvania and a CT Corporation

15   System address in Los Angeles, California.  (SAC at ¶ 49 and Ex. A.)  As is clear

16   from the letter itself, these are neither the Albertsons grocery store in Fallbrook,

17   California where Alaei allegedly purchased her bottle of Heinz 57, nor Kraft Heinz's

18   principal place of business *within California*.  The Court is not empowered to

19   substantially rewrite the statute to include a provision allowing consumers to notify

20   defendants in any manner they choose that may or may not effectuate actual notice,

21   particularly given the limited choices specifically enumerated in the statute.  *Outboard*

22   *Marine* held as much when it rejected the consumer's attempt to provide notice to

23   defendant's counsel.

24         Having failed to provide notice in strict compliance with Civil Code Section

25   1782, Alaei's claim for damages under the CLRA must be dismissed with prejudice.

26   *See Waller v. Hewlett-Packard Co.*, 2011 U.S. Dist. LEXIS 145276, at *18–20 (S.D.

27
28   [10] "A copy of a written instrument that is an exhibit to a pleading is a part of the
     pleading for all purposes." Fed. R. Civ. P. 10(c).

MEMO IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS SAC

1    Cal. Dec. 14, 2011) (dismissal with prejudice appropriate when a plaintiff seeks

2    damages under the CLRA first, "then provide the notice required by § 1782, and *then*

3    amend[s] his complaint so that the defendant will have had 30 days to address the

4    alleged wrong" (emphasis in original)).  This includes Alaei's prayer for punitive

5    damages, which are not available under her UCL and false advertising claims.  Cal.

6    Bus. & Prof. Code §§ 17203, 17535.[11]

7    **D.    Alaei's Claims for Declaratory And Injunctive Relief Fail Because**

8    **She Cannot Be Deceived In The Future**

9    Article III of the U.S. Constitution limits the jurisdiction of federal courts.  *See*

10   *Summers v. Earth Island Inst.*, 555 U.S. 488, 492–93 (2009).  To satisfy Article III's

11   standing requirements, a plaintiff must show:

> (1) they have suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

16   *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006) (citation and internal

17   alterations omitted).  Additionally, where a plaintiff seeks "declaratory and injunctive

18   relief, they must demonstrate that they are 'realistically threatened by a *repetition* of

19   the violation.'"  *Id.* (emphasis in original) (citations omitted).  A plaintiff "bears the

20   burden of showing that he has standing for each type of relief sought."  *Summers*, 555

---

[11] Kraft Heinz also takes issue with the fact Exhibit A never mentions tomato puree or mustard flour anywhere.  (SAC at ¶ 49 and Ex. A.)  The notice provision requires a consumer to identify "the particular alleged violations of Section 1770."  (Cal. Civ. Code § 1782(a).)  By not identifying these allegedly foreign ingredients in her letter, Alaei did not provide "sufficient notice of alleged defects to permit appropriate corrections or replacements."  *Outboard Marine*, 52 Cal.App.3d at 40.  Accordingly, the Court should dismiss her CLRA claim to the extent it is based on these ingredients.  *See, e.g.*, *Ang v. Bimbo Bakeries USA, Inc.*, 2013 U.S. Dist. LEXIS 138897, at *41 (N.D. Cal. Sept. 25, 2013) (dismissing CLRA claim to the extent premised on products not identified in the notice).

1   U.S. at 493; *see Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999)

2   (named plaintiff may not assert standing "based on alleged injuries to unnamed

3   members of a proposed class").

4       With respect to unfair competition and consumer protection statutes, "Article III

5   imposes a jurisdictional requirement that is more stringent" than California law. *See*

6   *Campion v. Old Republic Home Prot. Co.*, 861 F.Supp.2d 1139, 1146–50 (S.D. Cal.

7   2012).  The courts in this district have consistently held that consumers who are aware

8   of alleged mislabeling or do not intend to repurchase an allegedly mislabeled product

9   face no threat of repeated injury and lack Article III standing to seek declaratory and

10  injunctive relief. *See, e.g., Hall v. SeaWorld Entm't, Inc.*, 2015 U.S. Dist. LEXIS

11  174294, at *59–60 (S.D. Cal. Dec. 23, 2015) (Bencivengo, J.); *Makaeff v. Trump*

12  *Univ., LLC*, 2015 U.S. Dist. LEXIS 156160, at *23–24 (S.D. Cal. Nov. 18, 2015)

13  (Curiel, J.); *Oxina v. Lands' End, Inc.*, 2015 U.S. Dist. LEXIS 94847, at *17–19 (S.D.

14  Cal. June 18, 2015) (Anello, J.); *Burns v. Tristar Prods.*, 2014 U.S. Dist. LEXIS

15  102052, at *7–9 (S.D. Cal. July 25, 2014) (Bashant, J.); *Dorfman v. Nutramax Labs,*

16  *Inc.*, 2013 U.S. Dist. LEXIS 136949, at *22–25 (S.D. Cal. Sept. 23, 2013) (Hayes, J.);

17  *Mason v. Nature's Innovation, Inc.*, 2013 U.S. Dist. LEXIS 68072, at *5–16 (S.D.

18  Cal. May 13, 2013) (Moskowitz, J.); *Campion v. Old Republic Home Prot. Co.*, 861

19  F.Supp.2d 1139, 1146–50 (S.D. Cal. 2012) (Adler, J.); *Laster v. T-Mobile USA, Inc.*,

20  2009 U.S. Dist. LEXIS 116228, at *7–12 (S.D. Cal. Dec. 14, 2009) (Sabraw, J.)

21  *vacated on other grounds sub nom. Laster v. T-Mobile U.S., Inc.*, 446 F. App'x 613

22  (9th Cir. 2012); *Cattie v. Wal-Mart Stores, Inc.*, 504 F.Supp.2d 939, 951–52 (S.D.

23  Cal. 2007) (Burns, J.).

24      Alaei does not allege that she will purchase Heinz 57 in the future, nor could

25  she, given her other allegation that she would not have purchased Heinz 57 had she

26  known it contained ingredients that were supposedly "foreign." (SAC at ¶ 32.)  Now

27  she "knows."  Regardless of whether Alaei "often purchases consumable products,

28  including sauces," (*id.* at ¶ 33), it is implausible she will purchase Heinz 57 again in

-17-        No. 3:15-cv-02961-MMA-DHB

1  light of her alleged desire to only purchase sauces without purported "foreign"

2  ingredients.  Even if Alaei did purchase Heinz 57 in the future, she would do so with

3  full knowledge of, rather than reliance on, the alleged misrepresentation.  Alaei's

4  ability to confidently disregard the "MFD. in U.S.A." on a future purchase of Heinz

5  57 precludes any realistic threat of repeated injury.

6       Alaei does not intend to purchase Heinz 57 in the future, and she cannot be

7  misled even if she did.  Accordingly, Alaei lacks standing and Kraft Heinz

8  respectfully requests the Court dismiss Alaei's claims for declaratory and injunctive

9  relief with prejudice.

10  **III.    CONCLUSION**

11       Alaei's claims have no basis in fact or law.  Notwithstanding Alaei's wholesale

12  failure to adequately allege the Heinz 57 she purchased contained foreign ingredients,

13  Kraft Heinz is permitted to source raw ingredients from abroad.  These raw

14  ingredients are then combined with numerous others into Heinz 57, where they cease

15  to be distinct components of the sauce.   The Legislature has declared a product so

16  manufactured may lawfully be labeled "Made in U.S.A."  If Alaei wants more

17  stringent requirements, her recourse is the Legislature, not this Court.

18

19  Dated:    May 26, 2016                    **WILSON TURNER KOSMO LLP**

20                                   By:    /s/ Meryl C. Maneker
21                                          VICKIE E. TURNER
                                            MERYL C. MANEKER
22                                          ROBERT K. DIXON
                                            MARK A. REIN
23                                          Attorneys for Defendant
                                            KRAFT HEINZ FOODS COMPANY
24

25

26

27

28

MEMO IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS SAC